## AMERICAN DOUCIL CO. v. TWIN CITY WATER SOFTENER CO. et al. *

Circuit Court of Appeals, Eighth Circuit.
December 19, 1929.

No. 8556.

Harvey Lechner and Paul Synnestvedt, both of Philadelphia, Pa. (Merchant & Kilgore, of Minneapolis, Minn., Arthur Synnestvedt, of Philadelphia, Pa., and F. D. Merchant, of Minneapolis, Minn., on the brief), for appellant.

F. A. Whiteley, of Minneapolis, Minn., for appellees.

Before STONE, Circuit Judge, and MUNGER and REEVES, District Judges.

MUNGER, District Judge. The appellant brought a suit to restrain the defendants from alleged infringement of letters patent No. 1,586,764, issued to Harold Joseph Wheaton (American Doucil Company, assignee) June 1, 1926. The court found that there was no infringement and dismissed the bill, and the plaintiff has appealed.

The letters patent embrace a number of claims of processes and of compositions of matter. The patentee claimed to be the inventor of a double base-exchanging compound, for softening water. He described the object of his invention as a compound prepared by mixing a solution of sodium silicate and a solution of sodium aluminate under such conditions that a gel of homogeneous structure was produced from the whole mass of the mixed solutions, sufficiently stiff or solid to be inherently capable of maintaining its physical shape, and its structure retained and preserved during its subsequent treatment, and carried over into the finished product. This gel, when gently dried sufficiently to become hard, and then washed, is declared to be insoluble in water, porous, and consisting of granules of convenient size. The patentee, in his specifications, stated that the distinguishing feature of his invention was the production of the gel of homogeneous structure, and its preservation, thereby conferring on the finished product efficiency in base-exchanging capacity. The specifications further stated that it was necessary that the gel should contain a percentage of alumina (based on the total solids originally present in the mixture) of not less than 6 nor more than 16 per cent. and that that result was secured, by mixing in the cold ("that is not above, say, about 20° centigrade") the solutions in proportions calculated to yield a gel containing the desired percentage of alumina within these limits. The specifications further stated that the degree of dilution of the reagents depended on the temperature of the solutions, and that the temperature should be as low as conveniently possible and in any case beblow 20° centigrade; the required dilution increasing with the temperature. After giving two examples of methods of performing the process, the patentee in his specifications, made this statement:

"I do not claim, under this invention, any process in which a precipitate in a liquid is produced, the process of this invention producing a homogeneous stiff gel, into which the whole mass of the mixed liquids, sets, this gel being of uniform consistency in which the whole of the water present is held dispersed and fixed throughout the gel-structure."

The patent embraces 23 claims of process and product. Appellant concedes that the

*Rehearing denied March 8, 1930.

first 3 of the claims are not involved in this suit.

It appears from the evidence in this case that the art of softening water by the base-exchanging method is quite old. The usual method is to have the water pass through a bed of water-softening material in a tank. The base-exchanging compound takes up the lime or magnesia contained in the water, and in return for these minerals the compound returns sodium to the water. After a period of use the compound may be renewed or regenerated by subjecting it to a solution of common salt. As early as 1852 it was known that the double silicate of sodium aluminate was a base-exchanging compound. Since then a number of synthetic zeolites have been produced, founded upon that discovery. Patents, antedating the patent in suit, have been issued for processes and products seeking to make efficient the softening of water, by use of this double silicate. In a number of the patents the zeolite was described as produced from a precipitate resulting from the mixing of the solutions.

The trial court found, upon ample evidence, that under the teaching of the De Brunn (No. 1,161,200), the Rudorf (No. 1,-304,206), and the Massatsch (No. 1,343,927) patents, complete gels were obtained, and that there are hundreds of mixtures of sodium silicate and sodium aluminate which will produce gels. Under the teachings of the patent to Boehringer & Gessler (No. 1,050,-204), the mixture of these chemicals in a dilute solution produces a gel which is so stiff that a stick thrust into it will retain a fixed position. In view of the prior art, the trial court was of the opinion that the appellant's process was limited by the particular solutions, temperatures, and methods described in the specifications of the patent under which it asserted its claims, and that there was no infringement, but did not indicate what departure was found from these solutions, temperatures, and methods.

The appellees claim that they have not used the same percentages (6 to 16 per cent.) of alumina as this patentee stated that he used, and have not mixed their solutions in temperatures below 20 degrees centigrade, as the patentee advised. There are also contentions by the appellees of invalidity of the patent, because of anticipation, want of invention and insufficient disclosure.

The trial court did not think that the patent was invalid for any of these reasons, and our conclusion is the same, except as hereafter stated. A number of the claims in the patent for the process describe the method as the "herein described method," but claims 6, 7, and 19, contain no such limitation. Those claims are as follows:

"6. The method of manufacturing a double base-exchanging compound in the wet way, which consists in mixing the component cold solutions in completely gelatinizing strengths, in drying the gel so produced, and in washing the dried product.

"7. In the manufacture of a base-exchanging compound in the wet way, the step which consists in forming a stiff or solid gel from and including the whole mass of a mixture of solutions of sodium silicate and sodium aluminate."

"19. The method of manufacturing a double base-exchanging compound in the wet way, which consists in mixing the component solutions in such proportions and degrees of concentration as to produce a stiff or solid gel embracing substantially all of the constituent elements of the mixture, and then removing the soluble substances while still retaining or preserving the gel structure so produced."

In these claims there is neither expressly nor by necessary implication, any limitation of the percentage of alumina, or of the temperature at which the solutions should be mixed, as found in the specifications. The claims are the measure of the invention allowed, and the patent should be construed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee, if it may be done consistently with the language he employed. Klein v. Russell, 19 Wall. 433, 466, 22 L. Ed. 116; Tompkins-Hawley-Fuller Co. v. Holden (C. C. A.) 273 F. 424, 430. But, in view of what has already been stated, claim No. 7 seems to have been anticipated, and it is merely a step that had been demonstrated in prior patents, and, in view of the prior art, claims 6 and 19 should be narrowly construed, as the process is a mere combination of steps, all of which were old in the field.

The appellees do not seriously contest the novelty of appellant's process, if the claims are so restricted that the gel produced shall retain all of the mother liquor fixed within the gel structure, so that the soluble salts are retained until the gel assumes its rigid form as a gel, and in view of the prior art, and of the disclaimer made by the patentee, we think that claims 6 and 19 of the patent must be so restricted. The utility of this process is abundantly shown by the evidence. Some claim is made that

the patentee failed to make a full disclosure of his process, but the testimony in support of this theory is not convincing.

Regarding these claims as valid, the question of infringement arises. The method used by the appellant in practicing its process was to pour the mixed solution of sodium silicate and sodium aluminate into a shallow tray, and, as soon as the gel formed, the sides of the tray were removed. Without any further treatment at that time, the gel was gently dried in a current of warm air. This caused contraction of the gel, and it split, as a result of the drying, into small pieces. Later it was washed with water to remove any uncombined silicate, free alkali, or other solubles, and this washing caused a further division into granules, the final product used as a water-softening compound.

The process used by the appellees' companies has varied. They have mixed solutions of sodium silicate and sodium aluminate of completely gelatinizing strengths, so as to obtain a stiff or solid gel, embracing substantially all of the constituents of the mixture, and this gel would retain its form when placed on the tray. In this manufacture, instead of allowing a block or slab of the gel to dry completely in the form in which it was poured, the appellees introduced into the mass, before it had dried, a metallic grid-like instrument. This grid was pushed down into the soft, but fixed, gel structure, so as to divide the slabs into small cuboid forms. In a later process, instead of waiting until the gel had finally set before introducing the grid, the gel was poured out into trays while it was still in process of formation, leveled down somewhat, and the grid then inserted. The grid, in either case, is soon withdrawn.

One result of the process is to allow contact of the air more freely to the mass through the spaces where the grid has been placed, thus facilitating drying. Afterwards the gel is dried and washed. The appellees assert that these processes are not infringements of the appellant's process, because the only reasonable construction of the appellant's claim is that all the mother liquor in that gel is allowed to escape by evaporation, whereas the appellees' processes provide for the escape of a large part by filtration. In a highly technical sense it may be correct to say that the pressure of the grid into the gel causes an escape of some liquor by filtration; but it is quite apparent that the use of the grid does not change the process used by the appellant as to the portion of the gel that is undisturbed by the grid. The grid destroys the structure beneath it, by its pressure upon it, and wastes it, and causes the liquor contained in that portion to drain away, but the other and greater portions are undisturbed. There is some testimony to support a claim that there is also a filtration by drainage in the appellees' processes independently of the use of the grid, but the testimony as a whole is convincing that there is no substantial departure from the appellant's processes and therefore that there was infringement. Walker on Patents (6th Ed.) § 396a. The appellant's product, as defined in its patent, must, we think, be limited to the products produced by its own processes.

The decree will be reversed, and the case remanded for further proceedings in accordance with the views herein expressed.