40 C.C.P.A. (Patents)

## Application of TANCZYN.
## Patent Appeal No. 5927.

United States Court of Customs and
Patent Appeals.
March 11, 1953.

John Howard Joynt, Washington, D. C., for appellant.

E. L. Reynolds, Washington, D. C. (Clarence W. Moore, Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and O'CONNELL, JOHNSON, WORLEY, and COLE, Judges.

JOHNSON, Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the holding of the Primary Examiner rejecting as unpatentable over the prior art claims 10, 12, and 13, the only remaining claims in appellant's application for a patent on an "Alloy Steel and Products."

The appealed claims relate to wrought and polished stainless steel products, such as sheet, strip, wire and the like, which are substantially free from surface imperfec-

tions such as black spots, blisters, pits and inclusion lines. According to appellant, these imperfections, which are objectionable in many classes of service, are a common occurrence when such products are fashioned by rolling and polishing from "straight chromium" stainless steels having up to 3% nickel.

Appellant has found that such surface defects in this type of stainless steel are due to the presence of certain large complex silicate inclusions. In some way, apparently not fully understood these imperfections cause a difference in the reflectivity of the highly polished surfaces, thereby giving the appearance of dark spots or black spots. According to appellant, his investigation into the causes of the complex silicate inclusions revealed that manganese promotes the development of such inclusions in this type of steel, depending upon the amounts of chromium and silicon present. This is said to be due to the powerful reducing power of manganese with respect to silica in the fire brick of the furnace and related production equipment. He discovered also that the surface defects could be eliminated by keeping the manganese content to a minimum, at least below 0.2%, and maintaining a certain definite relationship between chromium, manganese and silicon content. Appellant believes that when the allegedly critical proportions of ingredients disclosed by him are maintained, objectionable large silicate inclusions are changed to small harmless silica inclusions; in any event, a highly polished product free of surface-defacing inclusions is claimed to be assured. It is stated by appellant in his application that manganese was regarded as a desirable ingredient in such steels by the prior art, and that heretofore it has been customary for steels similar to that here involved to have manganese contents in excess of 0.2%, which appellant claims to be the critical upper limit. The latter statements have not been challenged by the Patent Office tribunals.

Claims 12 and 13 differ slightly from each other and from claim 10, which is regarded as representative and reads as follows:

"10. In manufactures of the class described, wrought and polished

straight chromium stainless steel sheet, strip, wire, and like products containing large amounts of chromium and small amounts of manganese and silicon which products are substantially free of surface-defacing complex silicate inclusions and comprise 10% to 27% chromium, up to about 0.2% manganese and from incidental amounts up to about 1% silicon with said manganese content restricted to amounts beneath the curve in the accompanying diagram corresponding to the specific amount of said chromium, and the remainder substantially all iron."

The "curve in the accompanying diagram" recited in the claim refers to a diagram in appellant's specification which shows a series of curves for various specific values of chromium content (10%, 15%, 20%, 25% and 30%) in his stainless steel products. Each curve defines, for a steel of that chromium content, the critical upper limit on the maximum permissible quantity of manganese in the steel for any specific silicon content in order to avoid undesirable complex silicate inclusions, as distinguished from the harmless simple silica inclusions. It is stated in the specification that other chromium curves and upper permissible limits on manganese may be arrived at in the diagram by interpolation. As may be seen from claim 10, the claims cover a wrought and polished steel product having a chromium content within a certain range, manganese content of 0.2% or less, and silicon content of 1% or less, with the further qualification that the manganese content for any particular silicon content shall be restricted to a value beneath the curve for the particular chromium content, as determined from the above-mentioned diagram.

The references relied on by the Patent Office are: "Stainless Iron and Steel," by J. H. G. Monypenny, 2nd Ed., 1931, page 109, alloy under Table IX, and page 306, alloy No. A; also page 520, "Book of Stainless Steel," by E. E. Thum, 2nd Ed., 1935, pages 154 to 156.

On page 360 of Monypenny, there is disclosed a copper-bearing stainless steel sample, designated "alloy A," which contains 0.17% manganese, 0.28% silicon and 12.1% chromium. Page 109 of that reference discloses stainless steel test bars having 0.13% manganese content, 0.14% silicon and 12.2% chromium. Counsel for appellant concedes that allow A has manganese, silicon and chromium contents which answer to the requirements of the diagram referred to in the appealed claims. He contends, however, that the alloy on page 109, if carefully plotted on the diagram, falls just outside the critical limits. The Solicitor for the Patent Office replies that it falls just within the critical limits if plotted correctly. In view of appellant's concession with respect to alloy A, we think it immaterial which party is right as to the latter alloy, and we shall assume, for the purpose of this opinion, that the solicitor is correct.

Monypenny also discloses on page 520 that stainless steel having about 12 to 14% chromium and 0.3% carbon is used for the manufacture of cutlery to produce a knife "which will retain its polish perfectly under ordinary domestic use." Thum discusses the polishing of stainless steel sheet and strip and indicates that steel mills now furnish polished stainless steel products in a number of different finishes. In neither case does the reference make any mention of manganese or silicon content.

The examiner rejected the claims as unpatentable over the steel alloys disclosed on pages 109 and 306 of Monypenny in view of the disclosure on page 520 of Monypenny, and in Thum, that stainless steel alloys are commonly wrought and highly polished. The examiner held that the two alloys disclosed by Monypenny met the composition recited in the claims, and that there was no invention in processing the same into polished products since the cited references disclosed that it was common to produce highly polished sheets from such chromium steels.

The Board of Appeals agreed with these holdings of the examiner and accordingly sustained the rejection. The board also indicated that it agreed with the examiner that our holding in In re Cooper, 134 F.2d 630, 30 C.C.P.A., Patents, 946, was controlling in this case, whereas it disagreed with appellant's argument that the case of

Becket v. Coe, 69 App.D.C. 51, 98 F.2d 332, was determinative.

In Becket v. Coe, supra, Becket had discovered and claimed an allegedly new deep-drawing stainless steel. The prior art references disclosed broad ranges which included the more restricted ranges of Becket's claimed alloy. However, the prior art references, which were foreign patents, in no way indicated that the patentees had sought or had found Becket's desirable discovery of a new deep-drawing stainless steel. The court was of the opinion that Becket's particular proportions in his restricted ranges were critical and resulted in a new and different metal of highly desirable properties. It concluded, in view of this, that Becket's claims were not anticipated by, and were patentable over, the cited prior art.

In the Cooper case, supra, the applicants disclosed and claimed a tool steel alloy having constituents in ranges which applicants apparently admitted fell within the upper ranges disclosed in a prior patent cited by the Patent Office. This court was of the opinion that Cooper et al.'s claimed alloy differed from the alloy of the prior art reference only in degree and not in kind. Distinguishing from the Becket case, supra, we held that in the absence of a showing that the proportions claimed were critical and produced a new and different product from that of the prior art, the applicant's claimed alloy was unpatentable.

We think the essential question before us is clearly somewhat different from that in Becket v. Coe and In re Cooper. Here the claims are directed to an article of manufacture produced from an alloy composition covering a particular range, with the prior art showing two specific alloy compositions falling within the range recited in the claims. Thus, it is our opinion that neither of those cases is directly in point.

The essence of the rejection by the Patent Office tribunals is that Monypenny discloses two specific stainless steel alloys which fall within the range of the appealed claims; that Monypenny and Thum show that stainless steel alloys are commonly wrought and polished; that no invention is involved in polishing products wrought from Monypenny's specific stainless steel alloys; and that this would result in the product of manufacture claimed by appellant.

The difficulty with this rejection, in our opinion, lies in the fact that neither of the references indicates that its author was in any way concerned with the problem of surface defects in wrought and polished straight chromium stainless steel products. Not only does neither reference in any way suggest any solution for eliminating such defects, but neither indicates that the author even recognized that such a problem existed, or that he attempted to trace its source. The Monypenny reference indicates that the series of samples of copper-bearing alloy A were used in tests to determine the effect of copper on the acid resistance of stainless steel; the test bars of the alloy on page 109 were apparently used to determine the variation of mechanical properties of such alloy after being subjected to varying heat treatment conditions. These two specific alloys are in no way correlated to the production of wrought and polished straight chromium stainless steel products substantially free of complex silicate inclusions. We fail to see how the references would suggest to one skilled in the art the existence of the problem, its cause, and its solution. It is our opinion that the rejection of the board and the examiner is based upon an unfair and unwarranted reconstruction of the prior art in the light of appellant's disclosure, and hence is not proper. In re Bisley, 197 F.2d 355, 39 C.C.P.A., Patents, 982.

The case of Pittsburgh Iron & Steel F. Co. v. Seaman-Sleeth Co., 3 Cir., 248 F. 705, 708, involved a closely analogous fact situation.[1] In that case plaintiff sued for infringement of a claim directed to an iron alloy composition known as "Adamite." Defendant introduced in evidence prior art

---

1. So also does the case of Ex parte Browne, 91 USPQ 218 (Bd. of Appeals). The holding of the board was similar to that of the court in the Pittsburgh case, although that case was not cited as authority.

patents and publications, containing a number of formulae and analyses of specific iron and steel products which were within the range of the claimed alloy. The court held the claim valid stating that:

"* * * the alleged anticipating alloys nowhere showed or even suggested when made or published that they were Adamite or were metals which possessed in structure or performance the Adamite characteristics of cast iron and steel, or suggested to the art either the existence of such a metal or how to make it. If any one of the alleged anticipating alloys was Adamite, that fact, so far as the record shows, was not known to those who produced it or used it, and not being recognized as a new product with its distinctive characteristics, its production was purely an accident without profit to the art and without value as an anticipation. We are satisfied, therefore, that Adamite has not been anticipated by alloys, which, while accidentally of the same analyses, were not shown to be the 'article of manufacture' of the patent."

It is to be noted that in the Pittsburgh case, the Court of Appeals reached the above-stated holding notwithstanding that the claim in issue was actually drawn to an alloy composition, although the claim identified it as an "article of manufacture." We think the principle underlying the above-quoted holding in that case is apposite here; but we need not, *and do not,* decide this case on so broad a holding as that of the Pittsburgh case, supra,[2] for the appealed claims are not directed to an alloy composition as such, but to certain manufactured products. Specifically, the claims are directed to *"wrought and polished* straight chromium stainless steel *products* * * * substantially free of surface defacing complex silicate inclusions * * *."* In these particular circumstances, we think such limitations are significant and give life and meaning to the appealed claims. It was the search for such products by appellant which gave rise to discovery of the cause of the problem here involved, and to its

solution. Further, we agree with the argument by counsel for appellant that the distinction between claims to the wrought and polished products and any claim to the alloy composition as such is real and significant, since production of the alloy composition itself would not infringe the appealed claims to the wrought and polished products.

For the reasons set out above, it is our opinion that appealed claims 10, 12 and 13 patentably define an invention not disclosed by the prior art of record, and that the board erred in sustaining the examiner's rejection of these claims. With appellant's application before us, it may be possible to look back at the references of record and say that they suggested appellant's claimed product, but such hindsight should not defeat his right to the appealed claims. Becket v. Coe, supra.

In view of the foregoing, the decision of the Board of Appeals as to claims 10, 12 and 13 is reversed.

Reversed.

40 C.C.P.A. (Patents)

2. Cf. In re Steenbock, 83 F.2d 912, 23 C.C.P.A., Patents, 1244.