50 CCPA

Application of John L. MARGAROLI and Earl J. Hesse.

Patent Appeal No. 6989.

United States Court of Customs and Patent Appeals.

June 20, 1963.

Frank A. Neal, Naylor & Neal, San Francisco, Cal., James L. Dooley, Cushman, Darby & Cushman, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (S. Wm. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

MARTIN, Judge.

This is an appeal from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1 and 2 of appellants' application Serial No. 647,130, filed March 19, 1957 for MACHINE FOR FEEDING DATE TO A

PITTING MACHINE. Two claims have been allowed.

The appealed claims read:

"1. A machine adapted to orient dates and the like, which are haphazardly grouped together, into a position where they are separated from each other and similarly positioned with their major axes vertically disposed and to feed said dates to a pitting device comprising a hopper to contain haphazardly grouped together dates, a continuous path conveyor having a reach upwardly inclined in the direction of conveyor travel extending through said hopper along the bottom thereof, said conveyor being formed of a plurality of interconnected members having flared mouth pockets adapted to admit a date lengthwise and support it in that position, rigid support means for said reach of said conveyor, resilient mounting means for said support means, and vibration inducing means connected to said support means operable to impart high speed vibratory movement both to and fro and up and down to said conveyor reach.

"2. A machine according to Claim 1, said reach of said conveyor having its lowermost portion within said hopper inclined to the horizontal at an angle within the approximate range of 20–30° and having an intermediate portion which is upwardly inclined in the direction of travel thereof at an angle with respect to the horizontal, within the approximate range of 45–55°, and said reach having an uppermost portion which terminates in a horizontal attitude."

The references relied on by the examiner and the board are:

Dilger et al.  Re. 21,015  Feb. 28, 1939
Ashlock (I)    2,190,970   Feb. 20, 1940
Ashlock (II)   2,387,709   Oct. 30, 1945

■ The invention relates to a machine adapted to pick up and position dates with their major or longer axes disposed vertically, and transport the dates thus positioned to a station where they are transferred to the pockets of a horizontally disposed conveyor which feeds the dates to pitting heads. The machine includes a hopper into which the dates are introduced in unoriented or haphazardly grouped positions. They are oriented vertically and delivered to the pitting conveyor by an endless conveyor provided with date-receiving pockets. The conveyor extends through the bottom of the hopper and upwardly to the pitting conveyor. The upward slope of the conveyor at the hopper is preferably less than the upward slope at a more advanced position between the hopper and the pitting conveyor, as specified in appealed claim 2. A pair of spaced, rigid rails, secured to a skid plate, support the edges of the conveyor belt. Those elements are supported from the frame of the machine by resilient pivotal connections at a location near the top of the conveyor and at a lower point near the hopper. A vibrating mechanism including a motor-driven shaft carrying an off-center weight is connected to the spaced rails at a location just above the latter point. The vibrating mechanism is said to impart to the assembly an oscillatory vibration resulting in a "combined up and down and to and fro movement."

The Ashlock (I) patent discloses a machine for feeding and orienting fruit such as cherries or olives to a pitting machine. The machine comprises a hopper for the haphazardly grouped fruit and an endless conveyor made up of a series of rubber-covered apertured plates for receiving the fruit from the hopper and orienting it. The ends of the plates are connected to chains which ride on spaced rigid rails supported from the frame of the machine. The conveyor extends through the bottom of the hopper and from there is inclined upwardly in its direction of travel. No means are provided for vibrating the conveyor.

The Dilger et al. patent discloses a machine for feeding products such as small candies or nuts in oriented and spaced relation to a coating machine. The ma-

chine includes a conveyor belt consisting of a pair of spaced-apart bands or belts bridged by racks which have a plurality of holes for receiving the candies or nuts. In operation, uncoated candies or nuts are deposited on the front end of the conveyor which is downwardly inclined. A shaking or vibrating mechanism shakes the racks on the conveyor to align the candies or nuts in the holes in the racks as the conveyor moves downward.

The Ashlock (II) patent discloses an apparatus for orienting fruit such as cherries for presentation to a pitting mechanism. The apparatus includes a conveyor with a series of apertures each adapted to hold an article of fruit. A mechanism with rotating wheels, designated an orientation conveyor, is situated under a portion of the first conveyor so that the wheels engage each piece of fruit in the apertures of that conveyor to rotate the fruit and thereby orient it. Additional means are provided to vibrate spaced, rigid rails supporting the conveyor as it passes over the orientation mechanism, the conveyors being in a horizontal position during said vibration. The rails are pivotally mounted at a point near the hopper and are attached to a vibrating mechanism at an advanced location further from the hopper.

The examiner rejected claims 1 and 2 as unpatentable over Ashlock (I) in view of Dilger et al. and Ashlock (II). It was his position that the provision of portions disposed at two different slopes or angles in the inclined reach of the conveyor of Ashlock (I) would involve a mere matter of design. He further regarded the provision of vibration inducing means and a "resilient mounting" therein as obvious from the use of vibration means with the conveyors of Dilger et al. and Ashlock (II) taken with the well known and common use of spring or shock absorber types of mountings for frameworks. That rejection was sustained by the board. The board stated in part:

"As to claim 1, we agree with the Examiner that the particular shape of the article receiving pocket is obviously dictated by the shape of the article and its intended treatment. It is elementary knowledge, as borne out by the Ashlock patents, that the fruit to be pitted must be in a position with its axis passing through the stem and blossom ends vertical, and accordingly, it would be obvious to form the pockets so as to retain elongated fruit in an upright position for pitting purposes. * * We agree also with the Examiner that it is a well-known expedient to vibrate article conveyors and that Ashlock (II) in particular shows such to have been introduced in the fruit handling and pitting art, and that this patent would suggest to persons of normal skill in this art to similarly vibrate the support * * * of Ashlock (I), * * * * "

As to the difference in inclination of the reach of the conveyor in claim 2, the board considered the differently inclined sections to "amount to mere arbitrary variations in design, devoid of useful or patentable significance."

Appellants contend that the board erred in holding that Ashlock (II) and Dilger et al. would make it obvious for one skilled in the art to use vibration means in the upwardly inclined conveyor portion of Ashlock (I), pointing out that the vibration means operates on a horizontal conveyor in Ashlock (II) and on a downwardly inclined conveyor in Dilger et al. Appellants argue that the purpose of imparting the vibratory movement to the rigid rails supporting the pocket conveyor of Ashlock (II) is to jostle the fruit so as to orient it *in* the pockets. They urge that the function of the vibratory movement of the upwardly inclined section of the conveyor in appellants' machine is to *get the fruit into* the pockets of the conveyor and to promote cascading movement down the conveyor of those dates that have not become partially inserted into the pockets. Appellants state that, in Ashlock (II), the pivot point of the vibratable conveyor section is first passed over by the conveyor before the latter passes over the vibrating mechanism. It is their view that, if Ashlock (II) were

properly combinable with Ashlock (I), the appropriate way to modify Ashlock (I) in accordance with Ashlock (II) would be to install the pivotally mounted and vibratable conveyor section of the latter in the upwardly inclined pickup conveyor section of the former so that pivot point is disposed adjacent the bottom of the upwardly inclined conveyor. It is contended that such an arrangement would do more harm than good from appellants' standpoint, as the progressively increasing vibratory action in the direction of the upward end of the inclined conveyor would tend to prevent the fruit from entering the pockets.

The issue here is obviousness over the prior art.

The purpose of the vibrating means in Ashlock (II) appears to be primarily to jostle the fruit to get it in the desired position in the conveyor pockets. The vibration is employed in Dilger et al. to get the product being handled into the holes in the conveyor racks in a particular orientation. It seems to us that these references would make it obvious to a person of ordinary skill in the art to provide the conveyor of Ashlock (I) with vibrating means for those same purposes.

We see no merit in appellants' argument that following the Ashlock (II) teaching would result in placing the pivots for the vibrating section at the lower or "downhill" end of the conveyor section and that such arrangement would result in the vibration tending to prevent the fruit from entering the pockets instead of aiding it in doing so. Appealed claim 1, and with it dependent claim 2, embraces a structure in which the pivot could be at the bottom of the inclined conveyor flight. While appellants argue that claim 1 should be considered "in the light of the disclosure of the application, as inherently calling for the location of the rubber-bushed pivot to be * * * adjacent the upper end of the upwardly inclined conveyor section," the theory on which that contention is based has been emphatically rejected by this court. Thus, in In re Lundberg, et al., 44 CCPA 909, 244 F.2d 543, the court stated:

"We are of the opinion, * * * that, notwithstanding the third paragraph of section 112, it is the language itself of the claims which must particularly point out and distinctly claim the subject matter which the applicant regards as his invention, without limitations imported from the specification, whether such language is couched in terms of means plus function or consists of a detailed recitation of the inventive matter. Limitations in the specification not included in the claim may not be relied upon to impart patentability to an otherwise unpatentable claim."

As was said in citing the Lundberg et al. case in In re Jones B. Edwards, 285 F.2d 811, 48 CCPA 808:

"* * * We may not look to the specification to put into the claim a limitation that the applicant left out."

Concerning the use of a resilient mounting at the pivot, the examiner stated:

"* * * This feature does not reach inventive heights because machine designers commonly use this expedient. Spring or shock absorber types of mountings for frameworks are old and vibratory knockers for this type of structure is [sic] expected from the skilled designer if a quieter running device is desired in comparison to the direct mounting of Dilger. * * * Argument relating to the alleged universal movement of the belt at the vibratory area fails because all conveyor belts are flexible to an appreciable extent and the vibration transmitting means * * * in Dilger is also flexible to some extent whereby the conveyor has 'high vibratory movement both to and fro and up and down.'"

Referring to this same matter, the board stated:

"* * * As to the 'resilient mounting means' of the claim, all one would have to do is to provide a conventional rubber bushing at said

pivot, which is a notoriously old and known expedient in analogous relations as in pivots of automobile leaf springs, and of which we take judicial notice herein. Nothing unobvious would flow from such use in the modified Ashlock (I) apparatus."

Appellant does not appear to controvert that position of the examiner and board, and a careful study of the entire record does not reveal to us any error therein.

Since the use of vibrational motion for orienting fruits and candies in cups or holes is old any one skilled in this art would realize that controlled multi-directional vibrational motion for this purpose could be more effective.[1] Furthermore, in view of the fact that resilient mountings are being used in other devices to affect vibrations, such as in vibratory knockers and leaf springs, one skilled in the art would know that multi-directional vibrational motion could be accomplished by a resilient mounting at the pivotal point in the device at bar.

We also fail to find any error in the board's position that the use of two different angles of inclination for the upwardly-extending conveyor section of Ashlock (I) is devoid of patentable significance. That section of the reference conveyor appears to be inclined at an angle intermediate the angles of the two portions in appellants' construction and claim 2 permits a difference of as little as 15 degrees in the inclinations of the two portions. Certainly it would be obvious to a worker in the art that increasing the upward angle would increase the tendency for displacement of excess articles back toward the hopper but that use of too great an angle would offer disadvantages so far as getting articles into the conveyor pockets initially is concerned. One constructing a conveyor for particular articles, such as dates, would face a design problem based on those obvious considerations as related to the stickiness of the dates. We think such expedients as using conveyor portions having two different angles of inclination or using a curved section to attain a greater inclination at an advanced point in the conveyor reach would be obvious to a person of ordinary skill in the art.

Appellants, referring to an affidavit of record, contend that they have raised the pocket-feeding efficiency 143% in comparison to prior art devices. However, those prior art devices did not include the vibratory means which we think is obvious to use in view of Ashlock (II) and Dilger et al.

In their brief, appellants seem to place particular emphasis on a comparison of the appealed claims with the allowed claims, numbered 6 and 7. We think the decisions of this court clearly show that any argument for patentability of the appealed claims on the basis of similarities to the allowed claims are lacking in any significance to the issue here. As was said in In re Lilienfeld, 203 F.2d 750, 40 CCPA 904:

"There is no provision of law which clothes this court with authority to pass upon the patentability of claims which are allowed by the tribunals of the Patent Office, and there is no rule of patent law more definitely and firmly fixed than the rule to the effect that this court will not allow a claim of an application simply upon the basis that other claims in such application have been allowed below."

Moreover, it is apparent from appellants' arguments, as well as mere inspection of the allowed claims, that those claims include several limitations not present in the claims on appeal.

For the foregoing reasons, the decision is affirmed.

Affirmed.

1. Not only those skilled in the art would know that multi-directional vibrational motion would be helpful in seating an object in a cup or hole but most people, including children, learn this principle from endeavoring to seat a small steel ball in a cup in toy puzzles.