**Application of Arthur L. SCOTT.**
Patent Appeal No. 7018.

United States Court of Customs. and Patent Appeals.
Nov. 14, 1963.

Kenyon & Kenyon, Ralph L. Chappell, New York City, for appellant.

Clarence W. Moore, Washington, D. C. (J. F. Nakamura, Washington, D. C., of counsel), for Comr. of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH and ALMOND, Judges.

RICH, Judge.

This appeal is from the Patent Office Board of Appeals affirming the rejection of claims 9, 10, and 12–16 of application Serial No. 440,369, filed June 30, 1954, entitled "Hollow Glass Fiber Shaft."

The invention relates to hollow fiber-glass rods of uniform outside diameter, particularly suitable for use as archery arrow shafts. The claims on appeal are directed to both the rods and the method of making them.

The novelty of appellant's invention resides in using a *paper* tube as the core of the rod. The paper tube is cylindrical and consists of helical windings of paper tape, like an ordinary soda straw. The hollow fiber-glass rod is made by feeding strands of glass fibers coated with thermosetting resin longitudinally into a rigid mold in surrounding relation to the paper tube. The tube *remains inside* the fibers and serves as a permanent mandrel supporting the fibers. While in the mold the rod is heated to cure the resin, thereby forming a permanently hardened mass. Because the mold is rigid, the finished rod is straight and has a *uniform outside diameter.* Appellant does not allege novelty in the process except for the use therein of the paper core.[1]

In describing his invention, appellant's specification states:

" * * * it is an object of the invention to provide a linear shaft consisting of a hollow core of soft, fibrous material of *low rigidity* and an outer tube fabricated of longitudinally-extending glass fibers held together by a bonding agent, said core having *sufficient stiffness* to constitute a former for the surrounding glass fibers in the assembling of the shaft.

"Another object is to provide a core which is *soft* and *resilient* to permit the resin employed to shrink during the curing thereof without the formation of cracks as is the case many times when a hollow shaft is formed on a metal mandrel.

\* \* \* \* \* \*

" * * * the hollow paper core serves as a former during the assembly of the shaft but otherwise has a *very little effect on the mechanical characteristics* of the shaft, which characteristics are determined exclusively by the bonded glass fibers." [Emphasis ours.]

Thus, the paper core is strong enough to circumferentially support the glass fibers during molding *but will not distort the finished rod due to expansion and contraction caused by changing atmospheric conditions.* In use as an archery arrow shaft, uniform distribution of fibers, uniform outside diameter, and non-distorting core structure assure proper symmetry and balance.

▪▪ Claims 9 and 14 are representative are read as follows:

"9. The method of producing hollow shafts of fixed external shape adapted to retain their form without warping regardless of atmospheric conditions comprising withdrawing a multiplicity of flat ribbon-shaped cables from sources thereof, said cables being constituted by longitudinally extending plastic-coated glass fibers, feeding said cables into a rigid straight hollow mold simul-

---

[1] The specification states that the core is a "soft, fibrous material, such as paper." All the claims specify paper, and the

Patent Office position is based upon the use of paper vis-a-vis other "soft, fibrous materials."

taneously with a tubular *paper* core having a mechanical strength which is negligible compared to the strength of the finished shaft and which is bendable to conform to the shape imparted to the shaft by said mold to form a uniform layer of said coated fibers, [sic] about said core fitting into and conforming to the inner walls of said mold and heating said mold at a predetermined temperature and for a predetermined period to set said plastic and bind said fibers together to form a shaft whose mechanical characteristics are independent of said core and which conforms in shape to the shape of said mold. [Emphasis ours.]

"14. A hollow shaft for archery arrows and the like characterized by its uniformity of external dimensions and balance and ability to retain its form without warping regardless of atmospheric conditions and changes comprising an outer tubular cylindrical sheath of longitudinally extending straight glass fibers uniformly distributed circumferentially in a layer of uniform external dimension, each of said fibers being bonded to adjacent fibers and maintained in position with a flexible waterproof resin and a tubular *paper* core formed of a spiral wound *paper* tape with its edges in closed abutted relation, said core having a mechanical strength which is negligible compared to that of said sheath but adequate to support said fibers prior to the bonding thereof, said sheath determining the mechanical

characteristic of said shaft." [Emphasis ours.]

The rejection is based on the following references:

| Koch | 2,625,498 | Jan. 13, 1953 |
| Meyer | 2,694,661 | Nov. 16, 1954 |
| Scott | 2,749,643 | June 12, 1956 |

The method claims are rejected as unpatentable over Meyer in view of Koch. The article claims are rejected as unpatentable over Meyer or Scott.[2] The statutory basis of the art rejection is 35 U.S.C. § 103. Claim 13 is also rejected as "indefinite," the statutory basis for such rejection being 35 U.S.C. § 112.[3] We dispose of the latter rejection, which is manifestly proper, by sustaining it. The sole remaining issue is obviousness in view of the prior art.

The references all deal with making fiber-glass rods. Koch discloses a method for making *solid*, glass fiber reinforced, plastic rods and bars having a high percentage of glass fibers (60% to 76%) in proportion to the volume of resin for use as fishing rod blanks, arrow blanks, electrical insulation and the like. Such rods and bars are made by gathering a plurality of cables of longitudinally extending glass filaments through a bath of resin and into a tubular and *rigid* mold, and heating the mold to cure the resin.

Meyer discloses a method for making rods or tubes by applying a layer of longitudinally extending, resin-coated glass fibers to a core to make a solid rod or on a mandrel to make a tube. As a core, Meyer suggests using *"light wood,*

2. The board considered the Scott patent to be "cumulative" and, with respect to the article claims, discussed only the Meyer patent.

3. The last two lines of the claim are unclear. Appellant recognizes this and proposes to amend the claim subject to the indication of allowable subject matter. Claim 13 reads:
   "13. The method of producing a hollow glass shaft adapted to retain its

form without warping regardless of atmospheric conditions comprising forming a layer of glass filaments extending longitudinally and in uniform thickness about a tubular paper core having a stiffness to support the filaments but a strength negligible as compared to the finished shaft and joining said filaments to one another with heat setting plastic [while?] maintaining said filaments in a straightened condition *and.*" [Emphasis ours.]

*hardened foamed resin, or any similar light-weight material* which is strong in compression." (Emphasis ours.) To provide a smooth outer surface suitable for purposes such as archery arrows, for which the prior art rods were said not to be smooth enough, the glass fiber-covered core or mandrel is enclosed in a heat-shrinkable molding tube of "Saran" film. After heating to cure the resin, the molding tube is melted off. In lieu of the tube, a coating of film-forming solution or a hot melt may be applied and dried or cooled to form a heat-shrinkable covering. In lieu of a heat-shrinkable covering, a smooth surface may be formed by passing the glass fiber-covered core or tube of glass fibers through a curing mold having a cavity with a *flexible* wall (mold) forced by steam pressure to tightly embrace the resin and glass fiber layer.

Scott, one of appellant's own patents, discloses a hollow tapered shaft of resin-bonded glass fibers particularly for use in making fishing rods without the disadvantages of a balsa wood core or a solid glass fiber shaft. The shaft comprises an outer layer of longitudinally extending glass fibers and an inner layer of spirally wound glass fibers. The shaft is made by applying the inner and outer layers of resin-coated glass fibers on a tapered core, applying a spiral winding of cellophane to hold the glass fibers in place and heating the assembly to cure the resin. The cellophane wrapping and core are then removed.

The rationale of the rejection is simply this: (1) it is obvious to employ the rigid mold of Koch in the process of Meyer to make a hollow rod of uniform outside diameter; and (2) the core of *light wood or hardened foam resin* taught by Meyer is the "functional equivalent" of appellant's paper core, thus making the use of a paper core a "matter of choice" within the skill of the art. The solicitor properly crystallized the issue to be decided by this court in stating, "The ultimate issue * * * is whether it would have been obvious to use a paper

tube for the core of Meyer's arrow shaft."

We believe it would not have been obvious, within the meaning of 35 U.S.C. § 103, for reasons hereinafter stated and, therefore, do not sustain the rejection.

In the final rejection, the examiner states:

"It would appear, however, that the *foam resin core of Meyer* would *serve the same purpose* as applicant's paper core since neither core would tend to warp." [Emphasis ours.]

In his answer, the examiner further states:

"The core material of Meyer is considered to be *patentably equivalent* to the paper core of applicant." [Emphasis ours.]

The board adopts the same rationale in stating:

"Meyer's *foamed* core is the *functional and mechanical equivalent* of a paper tube core in the article claimed and, as indicated above, the selection of the paper core *involves only choice* and is unpatentable." [Emphasis ours.]

Appellant's position is that "functional equivalency" does not exist but that, in any event, different means are employed to produce the result, which means are unobvious.

We disagree with the supposed logic of the Patent Office position. The examiner and the board appear to hold that the mere existence of "functional and mechanical equivalence" establishes "obviousness." We think this involves a non-sequitur. Expedients which are functionally equivalent *to* each other are not necessarily obvious *in view of* one another. The statutory mandate of 35 U.S.C. § 103 is that the claimed subject matter be unobvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains. Assuming, arguendo, that the hardened resin core and the

light wood core taught by Meyer *are* both "functionally equivalent"[5] to the paper core of appellant, it does not follow that use of a paper core would be "obvious" to one of ordinary skill in view of the teachings of the references. On the basis of the record before us, we do not believe that light wood or hardened foam resin cores fairly suggest the use of paper cores or that paper cores *would* necessarily function in an equivalent manner.[6] We therefore do not find obviousness.

Appellant's invention is admittedly a simple one but we believe it to be an unobvious solution to a specific problem. The rejection, in our opinion, is based upon an improper hindsight view of the art after having full benefit of appellant's disclosure. The concept of using a resilient paper core and a rigid mold, to make a rod unaffected by changing atmospheric conditions, is not fairly suggested in the art. While it may be a fact that appellant's core and a prior art core will function in like manner, there is nothing to show that one of ordinary skill in the art would know that. And certainly the art wholly fails to disclose paper cores.

As this court stated in In re Sporck, 301 F.2d 686, 49 CCPA 1039:

"The fact that the invention seems simple after it is made is not determinative of the question of obviousness. If this were the rule, many of the most beneficial patents would be stricken down. If those skilled in the mechanical arts are working in a given field and have failed to discover a certain new and useful improvement, the one who first makes the discovery frequently has done more than make an obvious improvement which would have suggested itself to a mechanic skilled in the art, and such an invention is entitled to the grant of a patent thereon."

Also in In re Tanczyn, 202 F.2d 785, 40 CCPA 886, the court stated:

"With appellant's application before us, it may be possible to look back at the references of record and say that they suggested appellant's claimed product, but such hindsight should not defeat his right to the appealed claims."

We think such principles apply in this case. Furthermore, doubt, if there be

5. Appellant and the Patent Office present conflicting arguments as to "functional equivalency." The board stated, "The foamed plastic core would hold the coated glass filaments against a rigid mold when used in Meyer as it already does with the flexible mold; would yield inwardly under pressure from the rigid mold like appellant's paper tube; and concededly cannot warp the finished shaft regardless of weather conditions * * *." Appellant concedes that the plastic core "would probably not be affected by the elements."

However, appellant argues that a foamed plastic core must be absolutely straight and true, *even if used in a rigid mold.* We find it unnecessary to resolve this issue since our opinion would be the same, even assuming "functional equivalence."

6. We note that Meyer treats "any light wood, hardened foamed resin, or any similar light-weight material which is strong in compression" as functional equivalents and as suitable core material,

yet they do not appear to be so. All his examples are shown as having *wood* cores. However, according to appellant, it was a light wood, namely balsa wood, that created the very problem which he sought to remedy by the claimed invention. His brief states:

"When Scott tackled the problem, the obvious solution was to use a *balsa wood* core, but the balsa wood core made it impossible to obtain a true shaft, or one which would stay true. If the core did not warp prior to forming the shaft, it would probably do so after the shaft had been formed. In either case, it would warp the finished shaft regardless of any care taken in making it." [Emphasis ours.]

As we read Meyer, it is a matter of indifference which of his disclosed cores is used. If a foamed resin core *would* solve the problem created by using balsa wood, as the board assumes, this is certainly a thought which cannot be found in the reference. Rather, it appears from the teaching of appellant's specification.

any, on the question of patentability must be resolved in favor of the applicant. In re Pappas et al., 185 F.2d 695, 38 CCPA 746.

The rejection of claims 9, 10, 12, 14, 15 and 16 is accordingly reversed and the rejection of claim 13 is affirmed.

Modified.