51 CCPA

**Application of Norman W. MELOTT.**
**Patent Appeal No. 7190.**

United States Court of Customs and Patent Appeals.

May 21, 1964.

Charles R. Fay, Worcester, Mass., Dean Laurence, Washington, D. C. (Munson H. Lane, Washington, D. C., of counsel), for appellant.

Clarence W. Moore, Washington, D. C. (Fred W. Sherling, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

Melott appeals from the decision of the Board of Appeals affirming the examiner's rejection of claims 2 to 11, inclusive, in appellant's application [1] for "Aspirating Syringe." The board reversed the examiner's rejection of claims 12, 13 and 14.

Claim 2 is reproduced as illustrative:

"An aspirating syringe for use with a cartridge having a piston cork, said syringe comprising a barrel for reception of the ampoule or

1. Serial No. 568,873, filed March 1, 1956.

cartridge, a needle at one end of the barrel, means for puncturing the cartridge for leading the contents thereof to the needle, a retractible syringe plunger rod, a head at the other end of the barrel and slidably containing the plunger rod, the rod extending into the barrel, and piercing means on the plunger rod at its inner end for connection thereof with the cartridge plunger cork, said piercing means being relatively sharp and capable of piercing the cartridge plunger cork by a straight in-line push on the plunger rod."

The drawing portrays the following:

The claimed invention relates to a cartridge-type syringe having a plunger rod 32 with a retractible spearpoint head 38 at the inner end thereof for piercing the piston cork 22 of the cartridge or ampoule affixing the plunger rod to the cork, thus converting the syringe into an aspirating as well as an inspirating

means. In use of the device the locking sleeve 24 is backed off; the head 26, attached by hinge means, is pivoted to one side and the cartridge is inserted in the barrel. The head is then repositioned, the rod 20 is moved forwardly so as to engage the flange 36 with the exterior surface of the cartridge cork. Forward pressure on the plunger rod 20 results in piercing cork 22 by spearpoint 38 until it becomes completely embedded therein as shown in Fig. 2. Disposal of the cartridge is accomplished by retraction of rod 32 by pull-on finger piece 58 thus bringing the spearhead back in housed position in the sleeve as shown in Fig. 6. This action dislodges the spearpoint from the cork 22, allowing the entire cartridge to be disposed of, and readies the barrel for insertion of new cartridges. It is asserted that the spearpoint is more easily withdrawn from the cork due to the sharp edges 44 on the barbs 42. The spearpoint may be made integral with rod 32 or separable and replaceable by means of screw-threads such as shown at 40 in Fig. 2. The outer end of rod 32 is provided with an enlargement 54 serving as a guide and abutment for a coil spring 56 which functions to maintain the spearpoint in retracted housed position when not in use.

The references relied on by the board are:

| Effenberger | 773,857 | Nov. 1, 1904 |
| Pontius | 2,693,804 | Nov. 9, 1954 |
| Breitenbach | 2,789,559 | Apr. 23, 1957 |
| Hein | 2,833,280 | May 6, 1958 |

Effenberger shows a pointed spear-like barb for straight-line piercing engagement with a bottle cork for removal of the cork from the bottle.

Pontius shows a syringe plunger rod comprising an inner rod slidable in an outer sleeve and having three pointed barblike prongs for locking engagement with a syringe piston cork. The outer sleeve is designed to abut the cork to facilitate removal of same from the prongs.

Breitenbach shows an aspirating and injecting syringe with a plunger rod comprising an inner rod slidable in an outer sleeve having prongs horn-shaped with the points curved inwardly for engaging a syringe piston cork. The prongs engage the cork by simultaneous forward pressure and twisting motion of the inner rod.

Hein shows a spring between an inner rod and outer sleeve of a plunger rod. The spring functions to hold the inner rod and outer sleeve in engagement with a syringe piston.

Claims 2–14 were rejected by the examiner as unpatentable over either Pontius or Breitenbach "in view of the well known use of barb prong connecting means for engaging stoppers as typified by Effenberger," stating that the claims differed from the references "only in the particular type of plunger-piston connector employed on the end of the inner plunger rod." With respect to claims 10–11 the examiner regarded as conventional the resilient means of Hein normally retracting the inner rod and piston cork connector within the outer sleeve.

The board held that claims 2 to 9 do not patentably distinguish over Pontius. It interpreted Effenberger as cumulative, pointing to it, however, as an example of a barbed rod. It held that claim 5 was anticipated by Breitenbach since the claws of that reference are integral with the plunger rod and the claim does not preclude the rotary motion of the rod of the reference; that claim 7, absent its use provisions, recited a mere plunger rod not distinguishable from that shown in Effenberger and that recitation in claims 10 and 11 of resilient means to retract the piercing means within the plunger rod avoids Breitenbach in this respect *only* but Hein discloses and clearly teaches the addition of such means to Breitenbach for the same purpose in the same kind of device.

Appellant relies strongly on the board's evaluation of the Effenberger reference in its reversal of the examiner as to claims 12, 13 and 14. In this connection the board said:

"Effenberger relates to a bottle cork having a permanently embed-

ded, barbed rod with a handle for extraction of the cork from a bottle. The patentee explains in line 24 of page 1 that the extractor 'when applied cannot be pulled from its connected and operative relation with the body of the cork.' He thus teaches a connection and operation directly opposed to that of appellant, Pontius or Breitenbach. In combining references patentability cannot be negatived merely by selecting from the prior art those features which can be synthesized into an anticipation once it is known what features should be selected. The Effenberger device thus fails to supply the necessary feature which Pontius or Breitenbach alone does not possess, that is, the teaching of the deficiency and how to solve it."

From this premise, counsel for appellant argues that the board has thus rendered the Effenberger patent of no effect as a combining reference and restricted the references depended upon to: Pontius alone as to claims 2 to 9; Breitenbach alone as to claim 5; Effenberger alone as to claim 7; and Breitenbach in view of Hein as to claims 10 and 11.

As we have above noted, the board in sustaining the examiner's rejection of claims 2 to 9 on Pontius interpreted the Effenberger reference as cumulative "as an example of a barbed rod." We take it, therefore, that the Effenberger reference is before us for whatever it may be worth in relation to the issue of obviousness. In In re Wright, 256 F.2d 583, 45 CCPA 1005, appellant asserted a position similar to that advanced here. This court stated that the board's reasons for allowing other claims before it are irrelevant and that the court's only concern was "whether the appealed *rejected* claims have been properly acted upon by the board   *   *   *."

Appellant contends that the entire theory and operation of Pontius differ completely from his disclosure in that the reference shows claws in a grasping action on the cartridge cork as distinguished from appellant's spearpoint,

sharp on its forward edges, with a piercing function that will not tear the cork as in claw-like means.

Appellant's claims present his "piercing means" in varying ways. In claim 3 it includes "a shoulder to be embedded in" the cork. In claim 5 it is a "fixed pointed barb." In claim 9 the piercing means is extractable from the cork by "an element associated with the plunger rod." Claims 7 and 8 specifically claim the plunger rod.

It is clearly obvious that Effenberger discloses one example of a commonly known spearpointed barb or rod with a forward end point of penetrating sharpness, with opposite shoulders designed to resist rearward pull. It is equally obvious that it would be but a simple expedient to sharpen and condition the points of the oppositely facing shoulders to reduce to a desired degree the resistance to rearward pull.

Effenberger discloses a spearpoint for engaging a cork which is not intended to be easily extracted from the cork. When the spearpoint is extracted, relatively great effort is required and the cork is likely to be damaged. So, too, appellant's spearpoint will probably damage the cork when removed. The Pontius device permits easier removal of the barbs or claws from the cork because they do not penetrate the cork to the extent that they resist removal. Breitenbach discloses a corkscrew type of engagement which would destroy the cork if pulled straight back, but which can be relatively easily removed by a twisting motion, the reverse of the twist for engaging the cork. Whether one uses the relatively complex cammed claw arrangement of Pontius or the corkscrew-like means of Breitenbach, on the one hand, or the simpler spearpoint cork engaging device of Effenberger, on the other, is simply an obvious matter of choice in view of the references.

We are inclined to agree with the board that the "Pontius rectilinear movement of the plunger rod moving forwardly and rearwardly the attached pointed member which has a rearward surface or

891

shoulder resisting withdrawal anticipates the recitations in the claims of these features." Pontius further discloses that the claw is fixedly attached in the sense that it is not separated from the plunger rod, thus corresponding to the fixed barb recitation of claim 5.

We are unable, in the light of the reference with the well known example of the function and adaptability of a spearpoint barb as depicted in Effenberger, to ascribe error to the conclusion of the board, with reference to claims 2 to 9, that:

"Since barbs are commonly used on such elements as spears, harpoons and nails to resist withdrawal, it would be obvious to a person having ordinary skill in the art to place a barb on the Pontius pointed elements for the conventional purpose."

With further reference to appellant's argument relating to the alleged distinctive characteristics and function of the sharpness of his piercing means, it is noted that claim 2 embraces such means broadly and as being "relatively sharp." We do not see that such piercing means so alleged excludes the claws of Pontius. We agree with the board that in the absence of a particularly defined structure these characteristics so generally stated merely express a relative condition. It is noted that Pontius uses the word "penetrate"; Breitenbach uses the expression "penetrate into the piston stopper," while Effenberger refers to "piercing end * * * with barbs in the manner of an arrowhead." Certainly these references disclose "piercing means" sharp enough to pierce or penetrate.

Appellant argues that the board should have allowed claims 4 to 9, inclusive, along with allowed claims 12, 13 and 14 since the former are substantially the equivalents of the latter.

Aside from the fact that the allowed claims are not before us, the relevancy of appellant's argument as to our taking cognizance of the asserted equivalency of the claims is fully answered by this court in In re Margaroli et. al., 318 F. 2d 348, 50 CCPA 1400, where the same argument was made:

"In their brief, appellants seem to place particular emphasis on a comparison of the appealed claims with the allowed claims, * * *. We think the decisions of this court clearly show that any argument for patentability of the appealed claims on the basis of similarities to the allowed claims are lacking in any significance to the issue here."

We find not persuasive appellant's argument predicated on the basis that all of the claims were at one time or another held allowable by the examiner over Pontius and Breitenbach thus reflecting doubt as to allowability which should be resolved in appellant's favor.

■ We find no inference of doubt in the decision of the board affirming the examiner's rejection of the appealed claims. It is that decision which is before us for review. Our jurisdiction extends to and embraces none other than the adverse decision from which appellant has prosecuted this appeal. In re Fischer, 47 F.2d 794, 18 CCPA 1076; In re Boileau, 168 F.2d 753, 35 CCPA 1248; In re Atwood, 267 F.2d 954, 46 CCPA 901.

As we have noted, claims 10 and 11 recite resilient means to normally retract the piercing means and plunger rod within the outer sleeve. The board found that only in this respect did the recitation avoid the Breitenbach reference. The board noted that Hein discloses a spring for the "same purpose in the same kind of device" and thus "clearly teaches the addition of such means to Breitenbach."

Appellant contends that since Hein has no piercing means and the claws of Breitenbach "are believed not to be piercing means," the references are not properly combinable to anticipate claims 10 and 11. As we have pointed out, the claws of Breitenbach function to "penetrate into the piston stopper." It would therefore seem obvious to one of ordinary skill to provide Breitenbach with a

spring, such as disclosed by Hein, for the purpose recited in the claims.

■ A thorough review of the claims on appeal in the light of the cited references and with due consideration of the arguments of counsel, fails to convince us of reversible error on the part of the board in holding that it would be obvious to one skilled in the art having the references before him to produce the subject matter of the claimed invention.

The decision of the Board of Appeals is affirmed. ·

Affirmed.

RICH, J., with whom SMITH, J., joins, dissenting in part:

The invention here sought to be patented is described in the specification as an improvement in a known type of syringe. The improvement is in the use of a "retractible barbed or spearpoint head" on the old inner plunger rod which will hook into the "piston cork" of the disposable ampoule or cartridge, "converting the conventional disposable cartridge into an *aspirating* cartridge," (my emphasis) by which it is meant that the piston cork can be pulled back as well as pushed forward.

The cited references show that others had addressed themselves to the same problem or desideratum and had devised means by which the cork could be retracted by the syringe plunger. Pontius did it with a complex and expensive three-jaw and cam arrangement wherein three jaws are propelled out of the plunger head on curved paths toward the axis of the cork. "When these claw-like hooks are moved forward, their tips meet above the center of the plunger head." Breitenbach has a head with two short claws acting like corkscrews and requiring a twisting movement of the plunger rod to engage it with the cork. Hein has an entirely different system involving the use of a specially formed cork with a cylindrical collar on it and is not relied on for its cork-engaging structure. Effenberger does not relate to syringes at all.

The patentable subject matter disclosed in appellant's application as the one improvement appellant says he invented is the use of the barbed or spearpoint head to hook onto the cork. The Patent Office has found that a patentable invention is disclosed by the allowance of claims 12, 13, and 14. Insofar as the appealed claims are directed to the same improvement and so define it as to distinguish it from the references they, too, should be allowed.

It appears to me that appellant has devised a very simple, effective, easily operated aspirating connection which is not shown in the references relied on. The Patent Office position is that it would have been obvious to those skilled in the syringe art to *modify* the syringe structures of Pontius and Breitenbach by using a spearpoint connection such as that which it belatedly found in the 1904 patent to Effenberger by which a ring is *permanently* attached to a bottle cork to serve as a handle. Yet neither of the other syringe reference patentees, who filed in 1953 and 1955, found it obvious to use a barbed or spearpoint head. We hardly need look to Effenberger on this issue of obviousness considering the fact, of which we take judicial notice because it is such common knowledge, that barbed fish-hooks and spearpoints (of the type commonly depicted throughout modern times on Wrigley's gum wrappers) are older than the Christian era. If it was so obvious to use such a point, why did Pontius and Breitenbach go to such pains to devise more complex devices?

I am therefore of the view that it was not obvious to use a barbed or spearpoint head, according to appellant's invention, and that any claim which is limited to such a point is patentable. I find claim 2 is not so limited since it calls merely for piercing means capable of piercing the cork by a straight-line push *on the plunger*. Pontius meets this, though his jaws travel in curved paths.

Claim 3, however, calls for piercing means including a shoulder to be imbedded, which is a barb or spearpoint feature. Claim 4 is similarly limited and

adds that the shoulder, while *resisting* extraction, will permit it. Claim 5 specifies "a fixed pointed barb" to be embedded in the cork. Claim 6 depends from 4 and adds that there is a *pair* of shoulders.

Claim 8 does not define the invention described since it calls only for a "penetrating point."

Claim 9 specifies "barbed piercing means * * * for connection * * * with the cartridge cork" and uses further language implying that it is withdrawable by a straight pull of sufficient force greater than that required for aspiration.

Claims 10 and 11 are like claim 2 in calling for "piercing means" broadly. Another feature of the disclosed structure is here relied on, namely a spring retracting the plunger, which I find is old in Hein, which is all Hein is cited for, and these claims do not define patentable subject matter.

Claim 12 stands allowed. It reads:

"12. An aspirating syringe comprising a generally cylindrical magazine, a plunger reciprocable longitudinally within said magazine, and a substantially *flat aspirator hook* rigidly fixed to the forward end of said plunger; said magazine being adapted to receive therein a cylindrical ampoule having a piston stopper slidable forwardly therein to expel a medicament therefrom and retractible to afford aspiration, *said hook having substantially similar opposite side faces approximately parallel to the line of reciprocal movement* of the plunger; said *hook* being adapted to become embedded in said stopper without turning relatively thereto, and *having a portion opposing its withdrawal from said stopper* upon a retraction stroke of the plunger." [Emphasis added.]

It shows, I think, that the specific hook shown in the drawings in the form of a flat-sided spear, even with one of the two shoulders omitted, is regarded as patentable invention by the Patent Office. While we are not bound by that decision, the unanimous decision of the three men on the board, reversing the examiner's rejection of claims 12, 13, and 14, is certainly entitled to some weight. I think it is our proper function to try to promote some degree of consistency in patentability decisions and to reverse the rejection of claims limited to substantially the same subject matter as allowed claims where we do not disagree with such allowance. There is nothing in the flatness of the hook as recited in claims 12–14 to distinguish from the references since Effenberger's spear is just as flat as appellant's. If these claims define unobvious subject matter, so do several others, and I think they do.

I cannot agree with the reasons on which the board based its affirmance of the rejection on Pontius and Breitenbach. In the portion quoted by the majority, the board expressed the view that the "rearward surface" of the Pontius jaws "anticipates" the use of a barb or spearhead having shoulders for the reason that it resists withdrawal. This is merely saying that it anticipates because it accomplishes a similar result. We have recently had occasion to point out that this is legally bad reasoning. In re Scott, 323 F.2d 1016, 51 CCPA 747; In re Flint, 330 F.2d 363, 51 CCPA ——. Structure is here being claimed and the structures are not the same.

The board further opined that since barbs are so common, it would be obvious "to place a barb on the Pontius pointed elements for the conventional purpose." I think this is an absurd suggestion for several reasons. The Pontius structure, being in the nature of claws or talons gripping toward the center of the cork, need no barbs to perform their function. The use of barbs would make retraction of those talons extremely difficult, if not impossible, with his camming mechanism and would very likely render the device inoperative. The "corks" here are made of rubber or the like. Finally, even if barbs were placed on Pontius' elements, appellant's structure would not be produced.

Finally, I think the board's reasoning with respect to the obviousness of em-

ploying barbs is entirely inconsistent when one compares what was said in rejecting claims 2–9 and in allowing claims 12–14. Choosing between the statements, the only one which makes sense and is in accord with the law is the latter, which reads:

"In combining references [including common knowledge] patentability cannot be negatived merely by selecting from the prior art those features which can be synthesized into an anticipation once it is known what features should be selected. The Effenberger device thus fails to supply the necessary feature which Pontius or Breitenbach alone does not possess, that is, the teaching of the deficiency and how to solve it."

That reasoning must be applied uniformly to all claims appealed.

I would reverse as to claims 3, 4, 5, 6, 7, and affirm as to claims 2, 8, 9, 10 and 11.