53 CCPA

### Application of Leonard EDGE.

### Patent Appeal No. 7618.

United States Court of Customs and Patent Appeals.

May 5, 1966.

Kirkpatrick, J., dissented from reversal of rejection of claim 1.

Arthur H. Seidel, Joel S. Goldhammer, Philadelphia, Pa., for appellant.

J. Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C. of counsel), for Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRK-PATRICK.*

RICH, Acting Chief Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 1 and 6–8 in application serial No. 219,918, filed August 28, 1962, for "Business Bonus Card." No claim is allowed.

The invention is a business card, and method of making same, to be used by supermarkets, race tracks, movie theaters, etc., as a business inducing device. The card, of such size as to permit carrying in the customer's wallet, is of paper-like material and contains numerals printed in partitioned areas, usually located around the periphery but possibly elsewhere, which are punched out by an employee of the establishment to designate such matters as the amount of purchases made or the number of weeks of patronage. Also on the card is another indicium, representing the amount of the customer's bonus to which he is entitled once the card has been fully punched, but prior to which time the indicium is obscured from view. It is in the manner of concealing this indicium that appellant's invention resides, all other above discussed features admittedly being old.

Claims 1 and 6 are illustrative (emphasis ours):

1. A business bonus card comprising a layer of paper-like material having a front face and a rear face, means on said layer of paper-like material for providing a record indicative of the occurrence of a plurality of business transactions, indicia on one of said faces, *and a thin layer of metal bonded directly to said one face obscuring said indicia and capable of being erased to enable the denomination of said indicia to be ascertained.*

6. A method of making a business bonus card having a plurality of designated areas which are to be punched as a result of transaction of business comprising the steps of printing indicia on a face of the business card, and obscuring the indicia by bonding a layer of metal directly to the card over the indicia.

Claim 7 qualifies the metal bonding step as including "spraying bronze powder on the card." Claim 8 qualifies this step as

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate *in place of Chief*

*Judge Worley*, pursuant to provisions of Section 294(d), Title 28, United States Code.

including "applying gold foil to the card by a hot pressing operation."

The issue is patentability over the following references:

| | | |
|---|---|---|
| The Washington Post, page C–8 | | May 31, 1962 |
| Hoese | 2,999,698 | Sept. 12, 1961 |
| Neville et al. | 2,961,777 | Nov. 29, 1960 |
| Troubleshooting Trainer-Tester | | Copyright 1954 |

The Washington Post disclosure sets out a sales promotional card quite like appellant's, the sole significant difference being that the indicia-obscuring means is a rectangular panel of relatively heavy, high tensile strength, opaque leatherette paper which is attached to the card by zigzag stitching in such manner as allegedly to prevent unnoticed removal and replacement.

Hoese discloses details of a card like that in The Washington Post, and will not be considered further since the pertinent disclosure of the two references is essentially the same.

Neville et al. (hereinafter Neville) discloses special guide and answer sheets for use in training electronics technicians, although the applicability of the invention, according to the patentees, "includes, but is not limited to, the fields of education, entertainment and *sales promotion or advertising*. The invention consists of printing on a sheet, *an overlaying transparent and relatively erasure-proof protecting layer,* and an erasable or removable opaque covering applied over the protecting layer, so as to obscure the original printing until the erasable covering is removed." (Emphasis ours.) The invention is said to represent an improvement over the invention disclosed and claimed in a patent to Buitenkant, which, inter alia, "discloses an ink covering system, the obscuring part of which can be removed by erasure to expose the concealed answers." As explained in the solicitor's brief, Neville's improvement appears to reside in the provision of the intermediate transparent protective layer, thereby preventing destruction of the printed indicia during erasure of the obscuring cover. Ne-

ville's opaque covering is an ink film, containing up to about 50% pigment which *may* consist of titanium dioxide, aluminum powder or other opacifying material. If electrical machine grading is desired, a conductive opaque ink film consisting of "finely divided metallic powder, such as bronze powder" may be dusted onto a suitable size or glue previously overlaid on the intermediate layer.

The Troubleshooting Trainer-Tester reference is an actual answer sheet of the type disclosed in Neville and, as stated by the solicitor, "adds little of interest."

With regard to claim 1, the essence of the examiner's position, accepted by the board, is:

To substitute for the covering material of the Washington Post Disclosure [sewed on leatherette], a metallic coating which may be removed by erasing would involve no more than the substitution of one equivalent material for another. In Neville et al., an intermediate layer of material is positioned between the indicia and the covering to prevent the removal of the indicia. To omit this safeguard and its function would involve no more than a matter of choice.

We disagree with this reasoning for two reasons. First, the issue is not one of equivalence, but obviousness under 35 U.S.C. § 103. As stated in In re Flint, 330 F.2d 363, 51 CCPA 1230:

We agree with appellant and consider as dispositive the rationale of our recent opinion in In re Scott, 323 F.2d 1016, 51 CCPA 747, wherein we said:

The examiner and the board appear to hold that the mere existence of "func-

tional and mechanical equivalence" establishes "obviousness." We think this involves a non sequitur. Expedients which are functionally equivalent *to* each other are not necessarily obvious *in view of* one another. The statutory mandate of 35 U.S.C. § 103 is that the claimed subject matter be unobvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.

◼ Second, as to the examiner's point about omission of Neville's intermediate layer, together with its protective function, we agree with appellant that the function of this layer has been *retained*, not omitted, in the present invention since appellant's metal layer can be erased without removing the printed indicia notwithstanding the fact that the metal layer is bonded *directly* to the face of the card. While it may often be true that the mere omission of an element together with its function does not produce a patentable invention, it may also be unobvious to omit an element while retaining its function. In re Fleissner, 264 F.2d 897, 46 CCPA 831, and cases there cited.

◼ Being unable to find in the art any suggestion of a thin layer of metal bonded directly to a paper-like card, obscuring a printed indicia thereon, yet "capable of being erased to enable the denomination of said indicia to be ascertained," we reverse the rejection of claim 1.

◼ With regard to the remaining claims, 6–8 directed to method, we are unable to find such limitations as the one just quoted, or any other serving to distinguish the claimed method from the prior art. We agree with the board, referring to claim 8, that:

We see nothing unobvious in the hot pressing step or in the use of gold foil * * * because of the common use of gold foil and the claimed mode of application, on covers of books, manuscripts, brochures, etc. of which we take judicial notice.

Claim 6 from which claim 8 depends is even broader calling for "bonding a layer of metal directly to the card over the indicia." It reads on hot pressing gold foil and is unpatentable for the same reasons as claim 8.

Claim 7 presents a somewhat closer question. Whereas we, like the board, "have some doubts that a sprayed pure bronze powder will adhere to a card surface" and note, moreover, that there is no disclosure in the specification either that the card surface is specially treated to secure the powder thereto or of a bonding carrier for the bronze powder, the fact is that an issue of operability of the invention, or of adequacy of disclosure, is not before us. The sole question is whether obscuring indicia on a paper-like card by bonding a layer of metal directly to the card by spraying bronze powder thereon is obvious.

As we view claim 7, the invention there defined differs from Neville's disclosure of dusting "a finely divided opaque [metallic] powder" only in that appellant bonds his powder "directly" onto the card, as opposed to an intermediate protective layer. We find this difference insufficient to render claim 7 patentable because, unlike article claim 1, claim 7 contains no limitation as to the capacity of the metal layer to be erased to permit reading the printed indicia. Nor do we construe the word "directly" to *preclude* use of some sort of sizing material which would serve merely to bond the powder to the paper.

The decision of the board as to claim 1 is reversed and as to claims 6, 7, and 8 is affirmed.

Modified.

KIRKPATRICK, J., dissents from the reversal of the rejection of claim 1.