54 CCPA
**Application of Robert H. RENO.**
**Patent Appeal No. 7740.**

United States Court of Customs
and Patent Appeals.
Feb. 9, 1967.

Joseph C. Sullivan, New York City, for appellant.

Joseph Schimmel, Washington, D. C. (Jere W. Sears, Washington, D. C., of counsel), for Commissioner of Patents.

Before WORLEY, Chief Judge, RICH, SMITH and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.[*]

SMITH, Judge.

Appellant appeals from a decision of the Board of Appeals affirming the examiner's rejection of claims[1] 2, 4, 21 and 25 based on 35 U.S.C. § 103. The following prior art was relied on:

| | | |
|---|---|---|
| Frost | 2,683,005 | July 6, 1954 |
| Knerr | 2,075,042 | Mar. 30, 1937 |
| Lickley (British) | 755,965 | Aug. 29, 1956 |

Appellant's brief describes his invention as follows:

The invention is of an aircraft having a detachable cargo-carrying device and has as its principal object the provision of such a device which can be used without substantial change as a pod on an aircraft and alternatively as the body of a ground conveyance such as a truck. It is also an object of the invention to provide the top of the cargo-carrying device and the bottom of the aircraft fuselage with means adapted to nest the two when the device is raised into contact with the fuselage and to provide means for raising the cargo-carrying device into position at the bottom of the fuselage and also to provide means for releasably locking the two together.

Appellant's brief also sets forth a convenient explanation of the appealed claims and the applicable prior art:

*Claim 2* * * * emphasizes the nesting feature and was rejected as unpatentable over Lickley * * *.

*Claim 4* * * * emphasizes the securing together of pod and fuselage and was rejected as unpatentable over Lickley in view of Frost * * *.

*Claim 21* * * * emphasizes the securing of fuselage, pod and fairing

---

[*] Senior District Judge, Eastern District of Pennsylvania, sitting by designation.

[1] Application Serial No. 129,197, filed May 22, 1961, entitled "Airplane Having a Detachable Pod and Means for Adjusting Angle of Attack for Take-Off." Fourteen claims have been allowed.

and was rejected as unpatentable over Knerr * * *.

*Claim 25* * * * emphasizes the securing of the fairing and pod and was rejected as unpatentable over Frost and further rejected as unpatentable over Knerr * * *.

We shall consider the claims separately.

### Claim 2

The gist of appellant's argument is that:

Lickley does not disclose a nesting feature of his "pod." This feature, which according to proper definition, means the settling as in a nest. Oppositely disposed sides of the "pod" in Lickley do not abut respective oppositely disposed sides of the fuselage of his aircraft *in a manner such that the abutting surfaces give both horizontal and vertical support as in a nest.*

\* \* \* \* \* \*

* * * Lickley's "pod" does not nest but merely abuts the underside of the fuselage as he describes.

Lickley discloses a hovering aircraft having an "opening in the bottom of its fuselage normally covered by a platform." The specification states:

Preferably the platform, when retracted, fits into the opening in the fuselage and is substantially flush with the adjacent surface of the fuselage, so that when the aircraft is in flight its streamline shape will not be impaired.

\* \* \* \* \* \*

The platform has bevelled edges, and the sides of the opening in the fuselage are of corresponding shape so that when the platform is raised it will be guided into its correct location.

We think appellant's view fails to accord a fair construction to the teachings in Lickley. The mating bevel surfaces in Lickley serve as guides as well as locating means to present a flush surface over-all when assembled. While Lickley discloses a platform and appellant discloses a pod having vertical side surfaces we think it would be obvious to add sides to the platform and utilize the mating bevel surfaces if more cargo space was desired. Lickley expressly contemplated the use of the platform in connection with transporting cargo. We find no error in the board's decision as to claim 2.

### Claim 4

Claim 4 defines the aircraft and pod in nesting arrangement fastened by "a plurality of structurally independent, detachable driven-screw means mounted in said fuselage." Lickley suspends his platform by cables which allows the platform to be raised and lowered. Frost also discloses the use of cables to bring the pod in abutting relationship with the fuselage. The solicitor argues, and we agree, that "simple bolts would suffice here." Appellant argues that the securing means "are (1) structurally independent and (2) secure the pod to the fuselage in compressed abutment." We think the feature of fastening the pod to the fuselage by "independent, detachable driven-screw means" would be well within the skill of the art as the claim is so broad that it defines ordinary nuts and bolts. Considering the combination defined in claim 4, we find no error in the board's conclusion that the claimed combination would be obvious.

### Claim 21

Claim 21 defines the combination of a fuselage, pod and a fairing. The fairing is located below the fuselage and aft of the pod to present a smooth and streamline shape to the over-all structure. In claim 21 the fairing is secured to the pod by "interlocking elements * * * in wedged engagement" and the fairing is secured to the fuselage by "upward-pull means." Knerr discloses threaded elements and wing nuts to combine the above three elements. The board found that "The clamping action applied by a threaded element and wing nut can be fairly said to result in a wedged engagement of the parts." Here, as in claim 4, the very breadth of the language employed defines a combination which would be obvious to one of ordinary skill in the art.

Appellant argues in his brief as follows:

> * * * the term "wedged" as clearly used in the specification and claims implies compressed abutment of inclined planes which is not found in the reference. The threaded element and wing nut provide a form of attachment but do not provide "interlocking elements, on said pod and said fairing in wedged engagement." * * *

Wing nuts and threaded elements act as upward-pull means and interlocking elements in wedged engagement. The principles of threads as fastening means include inclined surfaces subject to compressed abutment and a wedging action. There is no need to resort to the specification to ascertain what invention is defined by the *claim*. Nor is the obviousness of the disclosed *embodiments* of appellant's invention at issue here. We therefore find no error in the board's conclusion as to the combination defined in claim 21.

### Claim 25

Claim 25 defines a combination of a fuselage, pod and fairing. The claim details the locking means between the pod and the fairing as follows:

> 25. In an aircraft having a fuselage and a cargo-carrying pod detachably secured together, and a fairing: locking means provided on the rear of said pod; and corresponding locking means provided on said fairing; both of said locking means being adapted to cooperate in readily wedged engagement for securing said fairing in self-locking engagement with said pod by insertion and lateral pull to restraint.

Here appellant has used *functional* language to define the locking means. The locking means must cooperate in "readily wedged engagement * * * by insertion and lateral pull." We do not think the operation of a threaded element and a wing nut suggests the above defined locking means. As the Patent Office offered no facts demonstrating the obviousness of the claimed locking means other than the wing nuts disclosed in Knerr and "the conventional hinge" in Frost we think the board erred in its conclusions as to claim 25.

The rejection of claims 2, 4 and 21 is affirmed. The rejection of claim 25 is reversed. The board's decision is therefore modified.

Modified.

WORLEY, Chief Judge (dissenting in part).

I find no reversible error in the decision of the board that claim 25 is "so broadly drawn as to be fairly rejected" on the wing nut locking means of Knerr. While the majority correctly states with respect to claim 21 that "there is no need to resort to the specification to ascertain what invention is defined by the *claim*," yet the majority appears, inexplicably, to do just that with respect to claim 25, the language of which is markedly similar to that employed in claim 21. It is, of course, well settled that limitations in the specification not appearing in the claims may not be relied upon to impart patentability to those claims. See In re Margaroli, 318 F.2d 348, 50 CCPA 1400; In re Edwards, 285 F.2d 811, 48 CCPA 808; *In re Lundberg*, 244 F.2d 543, 44 CCPA 909. Although Knerr may not show appellant's *disclosed* locking means, there can be no doubt that he shows the *claimed* locking means.[1] I would affirm the board's decision in its entirety.

---

1. I agree with the solicitor that:

   As shown in * * * Knerr * * *, the wing nuts * * * appear to have lopsided wings or handles rotatable * * * [in a plane] parallel to the longitudinal axis of the airplane. This means that the associated studs or bolts are transverse to that axis. Hence, when the bolts are inserted in [the] nuts * * * and the latter threaded up, there will be mutual pull to restraint laterally of the airplane. * * *